```
                       UNITED STATES DISTRICT COURT
                         DISTRICT OF PUERTO RICO
```

JUAN ANTONIO HERRERA SOTO,

    Plaintiff,

    v.                                    Civil No. 07-1101 (JAF)

CASIANO COMMUNICATIONS, INC.,

    Defendant.

**OPINION AND ORDER**

Plaintiff Juan Antonio Herrera Soto brings this action for discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117(a) (2006), the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5 (2006), and Puerto Rico laws 29 L.P.R.A. § 185a (2005) ("Law No. 80"), 29 L.P.R.A. § 1401 (2005) ("Law No. 81"), and 1 L.P.R.A. §§ 501-511b (2005) ("Law No. 44"), against Defendant Casiano Communications, Inc. ("Casiano"). Docket Document No. 1. Defendant moves for summary judgment. Docket Document No. 12. Plaintiff opposes, Docket Document No. 21, Defendant replies, Docket Document No. 32, and Plaintiff surreplies, Docket Document No. 36.

I.

**Factual and Procedural Synopsis**

We derive the following facts from the parties' motions, statements of material facts, and exhibits. Docket Document Nos. 1, 12, 13, 17, 21, 23, 31, 32, 36.

Defendant Casiano publishes periodicals and magazines in Puerto Rico and the United States. Defendant hired Plaintiff as a merchandiser in its circulation department on September 15, 1997. Plaintiff worked in this position until May 19, 1999, when he left Defendant's employ to pursue a different job opportunity. On December 14, 1999, Plaintiff reapplied to work for Defendant. On January 3, 2000, Defendant rehired Plaintiff to work as a messenger in the administration department. On September 13, 2000, Defendant promoted Plaintiff to the position of merchandiser supervisor of the publication Vida Actual. On June 19, 2001, Plaintiff became merchandiser supervisor of the distribution, shipping, and sales department.

In July 2001, Dr. Luis Pío Sánchez-Caso diagnosed Plaintiff with a herniated disc. Sánchez-Caso gave Plaintiff a medical certificate requesting that Plaintiff be excused from work due to his condition. Plaintiff underwent surgery on July 30, 2001.

On August 16, 2001, Plaintiff returned to work with a medical certificate requesting that his work days be limited to four-hour periods with fifteen-minute breaks every two hours. Id. Defendant

accommodated this request. On Dr. Sánchez-Caso's advice, Plaintiff began to work eight-hour shifts on September 10, 2001.

In 2004, Plaintiff again experienced back pain. After a nine-day absence from work during which Dr. Sánchez-Caso performed further tests, Plaintiff underwent a second surgery on October 19, 2004. Dr. Sánchez-Caso recommended three months of rest for Plaintiff. Defendant asserts that it advanced Plaintiff one month's salary during his absence because he had used up his sick and vacation leave. Docket Document No. 17, Ex. 4. Plaintiff states that he still had sufficient sick and vacation time to cover this absence, and did not receive an advance. Docket Document No. 21, Ex. 2.

On November 17, 2004, SINOT, Puerto Rico's non-occupational disability insurance, notified Plaintiff that he was not eligible to receive temporary benefits because he was covered under the Law of Social Security for Drivers, and his claim would be referred to the Program for Drivers' Insurance. Id.

On January 12, 2005, orthopedic surgeon Dr. José M. Montañez-Huertas authorized Plaintiff to return to work, beginning with four-hour work days and slowly increasing the number of hours. On February 10, 2005, Dr. Montañez-Huertas advised that Plaintiff could resume working eight-hour days.

Plaintiff alleges that after he returned to work, his supervisor, Alberto Santiago, began subjecting him to harassing and mocking comments. These comments included: telling Plaintiff that he

should go see his psychiatrist; criticizing Plaintiff's job performance and suggesting that he resign; threatening him with termination; calling him sick, slow, and useless; saying that Plaintiff's medical appointments took up too much time and that he was faking his problems to get medical leave; calling Plaintiff a robot because of the implants in his hips and back; claiming that Plaintiff was unable to satisfy his wife sexually due to his physical condition; asking Plaintiff if he had taken pills; and telling Plaintiff that Defendant would not provide him with any accommodations for his disabilities. Docket Document No. 21, Ex. 2.

Plaintiff asserts that Santiago's harassing conduct led Plaintiff to seek psychiatric treatment under the care of Dr. Domingo Cordero, and that Dr. Cordero diagnosed him with major depression. Id.

Plaintiff states that, as a result of his surgery and depression, he became disabled to the effect that he was not able to sleep, eat, drive, walk, have sexual relations, do household chores, relate to other individuals, or maintain his personal hygiene. Docket Document No. 1. Plaintiff asserts that he suffered short- and long-term memory loss and a limited capacity for thought processing. Id. Plaintiff also avers that he could not lift or handle heavy objects. Id. Plaintiff insists, however, that he was able to perform all of the duties associated with his job. Id.

Civil No. 07-1101 (JAF)                                                -5-

Plaintiff also alleges that after he returned to work, Santiago imposed more strenuous duties on him than before. Id. These responsibilities included driving a twenty-two foot truck and loading and unloading magazines by himself. Id. Plaintiff states that his new duties constituted a demotion to the position of "an ordinary clerk employee." Id. Plaintiff also claims that, after his surgery, he never received a raise or evaluation, although his peers did. Id.

Plaintiff reports having made several requests for accommodation to Santiago. Docket Document No. 21, Ex. 2. Plaintiff requested either an assistant to help him load and unload magazines off trucks or a change in his duties or position so that he would no longer have to drive a truck. Id. Plaintiff also asserts that he complained of Santiago's mistreatment at least nine times in 2005 to Defendant's human resources manager, Iris Febo, vice president Alberto Velázquez, and another Casiano employee, Haydee Rodríguez. Id. Plaintiff received no official response to his complaints.

On October 3, 2005, Santiago reported to other Casiano officials that he had discovered non-Casiano publications in Casiano's magazine racks in certain locations, and that he had found the label of another distributor behind one of Casiano's racks. Docket Document No. 17, Ex. 5. Plaintiff and Fernando Matos were responsible for distribution at those locations during the week of September 14, 2005, because a co-worker, Ivette Torres, was out sick. Santiago claims that Plaintiff had previously tried to interest Torres in

Civil No. 07-1101 (JAF)                                                -6-

distributing these magazines but Torres refused. <u>Id.</u> Defendant never questioned Plaintiff about the situation or conducted any type of formal investigation into Santiago's accusations.

Defendant discharged Plaintiff on October 6, 2005, without providing any explanation for his termination. On October 13, 2005, Plaintiff filed a complaint with the Anti-Discrimination Unit of Puerto Rico's Department of Labor and the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination in violation of the ADA and Puerto Rico law. <u>Id.</u> Plaintiff amended the complaint on March 15, 2006. The EEOC issued Plaintiff a right-to-sue letter on November 8, 2006. <u>Docket Document No. 21, Ex. 5</u>.

Plaintiff filed a complaint in federal district court on February 5, 2007. <u>Docket Document No. 1</u>. Defendant moved to dismiss the complaint for lack of prosecution on June 22, 2007. <u>Docket Document No. 8</u>. We denied Defendant's motion on July 18, 2007. <u>Docket Document No. 10</u>.

Defendant moved for summary judgment on November 1, 2007. <u>Docket Document No. 12</u>. Plaintiff opposed the motion on December 14, 2007. <u>Docket Document No. 21</u>. Defendant replied on January 8, 2008. <u>Docket Document No. 32</u>. Plaintiff surreplied on January 15, 2008. <u>Docket Document No. 36</u>.

## II.

### **Standard for Rule 56(c) Motion for Summary Judgment**

We grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 331 (1986). The burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. Id. at 331.

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). However, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2).

Civil No. 07-1101 (JAF)                                                    -8-

### III.

### **Analysis**

Defendant argues that we should grant its motion for summary judgment because Plaintiff has not provided evidence to support his claims of (1) disability as defined by the ADA; (2) discriminatory acts committed by Defendant; and (3) damages.[1] Docket Document No. 12, Ex. 2. We note that Defendant offers little evidence or analysis to support these contentions, focusing the bulk of its motions on the existence of Plaintiff's right-to-sue letter, which is not at issue in this case.[2] See id.; Docket Document No. 32.

The ADA prohibits discrimination against a "qualified individual with a disability because of the disability of such individual in regard to . . . discharge . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8).

---

[1] Defendant also argues that Plaintiff did not provide evidence to prove causation. Docket Document No. 12, Ex. 2. We interpret this to mean that Plaintiff did not demonstrate discrimination, and include our analysis of this contention in our discussion of Defendant's second argument.

[2] Defendant argues that Plaintiff did not obtain a right-to-sue letter before bringing this action. Docket Document Nos. 12, Ex 2, 32. This argument is moot because Plaintiff did obtain a right-to-sue letter prior to litigation and has submitted it into evidence. Docket Document No. 21, Ex. 5.

Civil No. 07-1101 (JAF)                                              -9-

To establish a claim of disability discrimination under the ADA in the absence of direct evidence, a plaintiff may "indirectly" prove his or her case by "using the prima facie case and burden shifting methods that originated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Jacques v. Clean-Up Group, 96 F.3d 506, 511 (1st Cir. 1996) (quoting Katz v. City Metal Co., 87 F.3d 26, 30 n.2 (1st Cir. 1996)). A plaintiff may proceed under McDonnell by demonstrating by a preponderance of the evidence that he (1) has a disability within the meaning of the ADA, (2) is qualified to perform the essential functions of his job, with or without reasonable accommodations, (3) was subject to an adverse employment action by a company subject to the ADA, (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees, and (5) suffered damages as a result. Jacques, 96 F.3d at 511. Because Plaintiff has not presented any direct evidence of disability discrimination, we apply McDonnell to the present case. Id.

Although Defendant does not refer to McDonnell in its motions, we interpret its arguments as a challenge to Plaintiff's establishment of the first, fourth, and fifth prongs of his prima facie case. Docket Document No. 12, Ex 2. We examine each of these contentions in turn.

**A.   Disability**

Defendant contends that Plaintiff does not have a disability as defined by the ADA. Id.

Civil No. 07-1101 (JAF)                                                  -10-

According to the ADA, disability is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "[T]he EEOC has defined 'major life activities' to include 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 21 (1st Cir. 2002) (quoting 29 C.F.R. § 1630.2(i) (1991)).

Plaintiff alleges that, as a result of his herniated discs, surgery, and severe depression, his abilities to sleep, drive, lift objects, walk, sit, stand up, attend to personal hygiene, and relate to other individuals are now severely limited. Docket Document Nos. 1, 21, Ex. 1. Plaintiff offers his own affidavit into evidence to support these claims, but has not included any medical records or documents as exhibits. Docket Document No. 21. Defendant, in turn, has not presented any affidavits or other evidence to counter Plaintiff's claims of disability. Docket Document No. 12. We, therefore, find that a genuine issue of material fact exists as to whether Plaintiff is disabled according to the ADA, and deny Defendant summary judgment on this issue.

**B.    Discrimination**

Defendant argues that Plaintiff has not established that Defendant committed any discriminatory acts against him. Docket Document No. 12, Ex. 2.

Plaintiff alleges that Defendant discharged him in violation of the ADA either because of his disabilities or in retaliation for Plaintiff's requests for reasonable accommodation of those disabilities. Docket Document No. 1. Plaintiff also alleges that he suffered harassment and demotion due to his disabilities and requests for accommodation. Id; Docket Document No. 21, Ex. 1. Plaintiff has not supported these contentions with any evidence beyond his own affidavit. Docket Document No. 21, Ex. 3.

Defendant counters by insisting that it terminated Plaintiff for unsatisfactory job performance, based on Plaintiff's use of Defendant's resources to support Plaintiff's own business in violation of company policy and in direct competition with Defendant. Docket Document No. 12, Ex. 2. Defendant, however, has not offered any evidence to prove that it informed Plaintiff of this reason for his termination or confronted him with any of the aforementioned suspicions. Defendant has also not provided any evidence regarding Plaintiff's charges of harassment, demotion, and retaliation. We, therefore, find that there are genuine issues of material fact as to whether Defendant discharged Plaintiff for discriminatory reasons,

Civil No. 07-1101 (JAF)                                                                                   -12-

harassed, or demoted him.  Accordingly, we deny Defendant summary judgment on the issue of discrimination.

**C.   Damages**

Defendant argues that Plaintiff has not established that he suffered damages. Docket Document No. 12, Ex. 2. It is undisputed, however, that Defendant discharged Plaintiff. Docket Document Nos. 13, 21, Ex. 2. We, therefore, deny Defendant summary judgment on this issue.

**IV.**

**Conclusion**

For the aforementioned reasons, we hereby **DENY** Defendants' motion for summary judgment, Docket Document No. 12, pursuant to Federal Rule of Civil Procedure 56.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 1st day of February, 2008.

                                      s/José Antonio Fusté
                                      JOSE ANTONIO FUSTE
                                      Chief U. S. District Judge